JOHN COLEMAN *v.* MARY E. HAIGHT et al.

The failure of a lessor to maintain premises leased in a tenantable condition dissolves the lease, although such lessor be not at fault.

APPEAL from the Third District Court of New Orleans, *Duvigneaud,* J. *Collens & Woolridge,* for plaintiff. *J. Q. Bradford* and *P. H. O'Neal,* for defendants and appellants. *J. S. Whittaker,* for intervenor.

MERRICK, C. J. This is an action for the recovery of rent. On the 27th of January, 1857, the plaintiff leased to the defendant certain premises, from 18th of February to the 31st of October, 1857, at sixty dollars per month, payable monthly, with *J. G. Goodall* as security.

In the month of March following, it became necessary to take down a wall of the house leased for the purpose of constructing a large building on the adjoining property, called the Seaman's Home, and about the middle of the month the premises were abandoned by the defendant as uninhabitable. This suit is brought to recover of the defendant the rent of the whole term.

The District Judge was of the opinion that there was no fault on the part of the plaintiff; that the pulling down of the party wall was no act of his; that the proprietor of the adjoining lot had an undoubted right to pull down the wall held in common in order to secure the building he was about to erect, and that neither the owner of the house, the wall of which was to be pulled down, nor his tenants could raise any complaint, and he cites Arts. 677 and 678 of the Civil Code in support for his conclusions.

It appears to us that the learned Judge of the court *a quo* has fallen into an error in supposing that the lessor when not in fault is exempt from the obligation to maintain the thing leased in a tenantable condition. This obligation is to guarantee to the lessee the enjoyment, *ut conductori re frui liceat.* In the language of the Code, he is bound by the very nature of the contract to maintain the thing in a condition such as to serve the use for which it is hired, and to cause the lessee to be in peaceable possession during the continuance of the lease, (C. C. 2662) and this guaranty extends to vices and defects which prevent the thing from being used even if it appear that the lessor knew nothing of their existence, (C. C. 2665), and the lease may be annulled, or the rent diminished, even if the thing be partially destroyed or taken for public utility. C. C. 2667. So too, "if without the fault of the lessor, the thing ceases to be fit for the purposes for which it was leased, or if the use be much impeded, as if a neighbor, by raising his walls shall intercept the light of a house leased, the lessee may, according to circumstances, obtain the annullment of the lease, but has no claim for indemnity." C. C. 2669. So too, in regard to repairs; the whole rent is to be remitted if the repairs have been of such a nature as to oblige the tenant to leave the house, or the room, or to take another house, while that which he had leased was repairing. C. C. 2670.

In this case, it has been proven by one witness that the defendant consented to the pulling down of the wall, but we cannot think, in the absence of testimony to that effect, that the tenant intended to make the lessor a donation of the rent during the building of the new wall, or to do anything more than release him from his obligation of lessor.

The house became untenantable; the work drove away defendant's boarders, destroyed her furniture, and compelled her to obtain another house.

Three witnesses testify that plaintiff told defendant to occupy the back building until she could suit herself, or do better, and after she left he took possession of the property, and subsequently leased the same to a tenant under a protest that he did it for the benefit of the defendant, and to hold her responsible for the residue of the rent.

The rent for the month of February appears to have been paid, and the proof shows that subsequently the defendant was more injured than benefited by the short occupancy of the premises with her furniture.

The intervenor has not appealed from the judgment, which takes no notice of his demand.

It is, therefore, ordered, adjudged and decreed, by the court, that the judgment of the lower court be avoided and reversed, and that there be judgment against the plaintiff's demand and in favor of defendants, with costs of both courts.